UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| LISMORE VILLAGE HOMEOWNERS' ASSOCIATION, INC., | ) ) | Civil Action No.: 6:14-CV-2185-BHH |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **Opinion and Order** |
| | ) | |
| EASTWOOD CONSTRUCTION, LLC f/k/a EASTWOOD CONSTRUCTION COMPANY, INC., | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant's motion to dismiss for lack of subject matter jurisdiction, or in the alternative, to transfer the case to the United States District Court for the Eastern District of North Carolina (ECF No. 34), Defendant's motion to extend the scheduling order (ECF No. 50), and Plaintiff's motion to compel (ECF No. 51). For the reasons set forth in this Order, Defendant's motion to dismiss, or in the alternative to transfer, is denied, Defendant's motion to extend the scheduling order is granted in part, and Plaintiff's motion to compel is granted.

## BACKGROUND

Plaintiff Lismore Village Homeowners' Association ("Plaintiff," "Lismore HOA," or "Association") filed suit on April 29, 2014, in the Court of Common Pleas for Greenville County, South Carolina, alleging breach of Lismore HOA's restrictive covenants and breach of a fiduciary duty owed to Lismore HOA. On June 5, 2014, Defendant Eastwood Construction Company, LLC ("Defendant" or "Eastwood") removed the lawsuit to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C.

1

§§ 1332(a) and 1441. (ECF No. 1.)

Eastwood is a home builder and real estate development company that has been in the real estate business for more than thirty-five years. Landcraft Management, LLC ("Landcraft") was, prior to its bankruptcy proceeding, a regional real estate developer, with developments in North and South Carolina. Landcraft's business practice was to form a limited liability company for each new subdivision it developed. That LLC would generally purchase the real estate, contract with lenders and builders, and construct the infrastructure improvements and amenities for the subdivision. The LLC would also contract with Landcraft to manage the development. Lismore Townes, LLC ("Lismore Townes") was one of Landcraft's subsidiary LLCs and developed Lismore Village, the Greenville, South Carolina subdivision that is the subject of this lawsuit. During times relevant to the case, Eastwood was under contract with Landcraft in several real estate developments around the Carolinas, including Lismore Village. (ECF No. 34-3 at 2.)

When the real estate market deteriorated in mid to late 2008, Landcraft's developments began experiencing financial trouble, and Landcraft filed a number of voluntary petitions for bankruptcy relief on behalf of certain subdivision LLCs which were its subsidiaries. On November 7, 2008, Eastwood and others filed an involuntary bankruptcy petition ("Landcraft Bankruptcy Case") under Chapter 7 of Title 11, United States Code in the U.S. Bankruptcy Court for the Eastern District of North Carolina ("Bankruptcy Court"). (ECF No. 34-2.) The involuntary petition was granted and an order for relief was entered declaring Landcraft a Chapter 7 debtor under the Bankruptcy Code. (ECF No. 34-3.) Richard D. Sparkman ("Sparkman" or "Trustee") was appointed as trustee, effective January 20, 2009. (Sparkman Decl. ¶ 2, ECF No. 34-4.)

At the time the Landcraft Bankruptcy Case commenced, Landcraft was a defendant in an adversary proceeding ("Adversary Proceeding") filed by Eastwood against it and co-defendants Old Towne, LLC ("Old Towne") and Landcraft Properties, LLC. (ECF No. 34-6 at 3.) Landcraft Properties, LLC was later dismissed from the Adversary Proceeding. (*Id.*) The Adversary Proceeding was filed in the Chapter 11 bankruptcy proceeding of Old Towne, which was also pending in the Bankruptcy Court. (*Id.*) Gerald A. Jeutter, Jr. ("Jeutter") was the duly appointed and acting trustee of Old Towne and other subdivision LLCs affiliated with Landcraft (not including Lismore Townes) in their respective bankruptcy cases. (*Id.*)

Among other things, the Adversary Proceeding, sought a declaratory judgment regarding the disposition of $136,792.50 held by an escrow agent under an escrow agreement authorized by order of the Bankruptcy Court entered January 14, 2009. (*Id.*) After negotiations between Eastwood, Old Towne, Landcraft, and others, the parties reached a settlement of all claims in the Adversary Proceeding. Accordingly, Sparkman, as Chapter 7 Trustee for Landcraft, filed a motion to compromise in the Bankruptcy Court seeking approval of the terms of the settlement agreement, *inter alia*, resolving the Adversary Proceeding and addressing the status of Eastwood's general unsecured claims in the Landcraft Bankruptcy Case. (ECF No. 34-5.)

The motion to compromise was approved by order ("Settlement Order") of the Bankruptcy Court on July 24, 2009. (ECF No. 34-6.) In relevant part, the Settlement Order directed the distribution of a certain amount of the escrowed funds to Eastwood, authorized trustees Sparkman and Jeutter to appoint Eastwood as the "agent of the declarant for homeowner association issues in the Landcraft and Landcraft affiliated

subdivisions (the 'Declarant Agent')", and set forth the status of Eastwood's general unsecured claims in the Landcraft Bankruptcy Case. (*Id.* at 4-5.)

One of the assets administered by Sparkman in the Landcraft Bankruptcy Case was its one hundred percent membership interest in Lismore Townes. (ECF No. 34-4 ¶ 4.) As previously mentioned, Lismore Townes was the owner and developer of a residential townhome development in Greenville, South Carolina known as Lismore Village. (*Id.*) Lismore Village is a community composed of eighty-two (82) single-family attached townhomes in Greenville County and is governed by the Declaration of Covenants, Conditions, Restrictions, and Easements for Lismore Village ("Declaration") recorded in the Register of Deeds Office for Greenville County in Book DE 2242 at Page 1633. (ECF No. 28-2.) The Declaration sets forth, *inter alia*, the definition of a "Declarant" with respect to Lismore Village, the roles and responsibilities of such a "Declarant," and a covenant for assessments applicable to each lot in Lismore Village. (*Id.*) Exhibit B to the Declaration is the By-Laws of Lismore Village Homeowners' Association, Inc. ("By-Laws"). (*Id.* at 25-36.) The By-Laws document includes its own definition of "Declarant" with respect to Lismore Village, which differs from the definition in the Declaration. (*Id.* at 25.) The By-Laws document further describes the procedure for establishment of a Board of Directors, the powers and authority of such a Board, and the duties of such a Board—including the fixture and collection of assessments applicable to each lot in Lismore Village. (*Id.* at 28-32.)

Plaintiff Lismore HOA is a not-for-profit corporation composed of all homeowners in the Lismore Village subdivision. (Compl. ¶1, ECF No. 28.) Plaintiff's complaint alleges that Eastwood owned and developed some seventy-one (71) residential lots ("Subject

4

Lots") within Lismore Village. (*Id.* ¶ 6 & Ex. A.) The complaint further alleges that Eastwood assumed the role of "Declarant," under the definition in the Declaration, beginning in February 2007 and continuing until February 2012. (*Id.* ¶¶ 13-15.) As the putative "Declarant" for Lismore Village, it is averred that Eastwood took the following actions: (a) hiring and retaining HOA Community Management, LLC to serve as Association manager; (b) directing HOA Community Management to pay various vendors on behalf of the Association; (c) serving as the Board of Directors for Lismore Village, officially or unofficially, pursuant to Article IV, Section I of the By-Laws; (d) exercising architectural control authority; (e) preparing or approving the annual budget for the Association; (f) approving the annual assessment rate and installment schedule for the Association; (g) directing HOA Community Management to invoice all lot owners except Defendant; (h) directing HOA Community Management to prepare estoppel or payoff letters for closings on all lots except those sold to Defendant; (i) directing HOA Community Management to file liens against certain lot owners for failure to pay said assessments; and (j) maintaining model homes for sale of Defendant's lots. (*Id.* ¶ 16.) According to the complaint, the homeowners in Lismore Village assumed responsibility for the Association in February 2012 when they elected their first member-controlled Board of Directors. (*Id.* ¶ 17.)

Shortly after being elected, the homeowner Board of Directors sent a formal demand to Defendant seeking payment of assessments that Plaintiff alleges had accrued, but were unpaid, during Defendant's ownership of the Subject Lots. (*Id.* ¶ 18.) It is alleged that, having received this demand, Defendant expressly refused to make payment of the assessments putatively owed. (*Id.* ¶ 19.) Accordingly, Plaintiff brought a

breach of contract/breach of covenant claim and a breach of fiduciary duty claim regarding the unpaid assessments. (*Id.* ¶¶ 20-51.)

Eastwood asserts that it *was never* the "Declarant" for Lismore Village and that pursuant to the By-Laws, Lismore Townes *was* the Declarant, along with any others designated by Lismore Townes. (ECF No. 34-1 at 5-6.) Eastwood avers that during the course of Sparkman's investigations into Landcraft's assets he determined that Lismore Townes, in its role as Declarant for Lismore Village, had certain responsibilities to Plaintiff, and that Sparkman, as Trustee for the Landcraft Bankruptcy Case, bore full responsibility for the administration of all of Landcraft's assets. (ECF No. 34-4 ¶¶ 4, 6.) Moreover, Eastwood alleges that pursuant to the terms of its settlement agreement with Sparkman, as authorized in the Settlement Order, Eastwood was appointed as the "Declarant Agent," to act as agent for and on behalf of the Trustee, for the purposes of discharging certain duties of the Declarant of homeowners' associations where Eastwood was involved as builder, including Lismore Village. (*Id.* ¶ 5.) However, Eastwood claims it was never appointed as the Declarant itself by the Bankruptcy Court or Sparkman, as Sparkman acquired that role when he was appointed Trustee in the Landcraft Bankruptcy Case. (*Id.*) The Landcraft Bankruptcy Case was closed on March 28, 2013, and Sparkman was discharged as Trustee. (*Id.* ¶ 7.) The membership interest in Lismore Townes was abandoned. (*Id.*)

On November 3, 2016, Defendant filed a motion to dismiss for failure to comply with the *Barton* doctrine, or in the alternative, to transfer the case to the United States District Court for the Eastern District of North Carolina, which was the situs for the bankruptcy case at issue. (ECF No. 34.) Plaintiff responded on November 20, 2015

6

(ECF No. 35), and Defendant replied on December 10, 2015 (ECF No. 43). On November 30, 2015, the Court issued an Amended Conference and Scheduling Order requiring, *inter alia*, that expert witnesses be designated by April 1 and May 6, 2016, respectively, and that mediation be conducted by and discovery be concluded by June 10, 2016. (ECF No. 41.) By way of its motion, Defendant seeks to extend the discovery deadlines and stay or extend all other deadlines and scheduling orders pending the Court's resolution of the motion to dismiss or transfer. (ECF No. 50 at 2-3.) Alternatively, Defendant seeks to extend all deadlines for 90 days. (*Id.*) Plaintiff responded on April 11, 2016 (ECF No. 52), and Defendant replied on April 19, 2016 (ECF No. 53). Finally, Plaintiff filed a motion to compel various depositions on April 7, 2016 (ECF No. 51), and Defendant responded on April 21, 2016 (ECF No. 55). The Court has thoroughly reviewed all of these filings and the applicable law, and now issues the following rulings.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(1), a party may assert the defense of a lack of subject-matter jurisdiction by motion. If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3). "When a motion to dismiss is based on lack of subject matter jurisdiction, the district court's inquiry is limited to determining whether the challenged pleadings set forth allegations sufficient to show the court that it has subject matter jurisdiction over the case." *Bedi v. Grondin*, 51 F.3d 265 (4th Cir. 1995) (unpublished table decision). "In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

7

Under Fed. R. Civ. P. 12(b)(7), a party may assert by motion the defense of failure to join a party under Rule 19. Such a motion requires the court to conduct a two-step inquiry. First, the court must determine "whether a party is necessary to a proceeding because of its relationship to the matter under consideration pursuant to Rule 19(a)." *Owens-Illinois, Inc. v. Meade,* 186 F.3d 435, 440 (4th Cir. 1999) (quoting *Teamsters Local Union No. 171 v. Keal Driveweay Co.*, 173 F.3d 915, 917–18 (4th Cir.1999)). If the absent party is necessary, it will be ordered into the action. *Id.* If the party is necessary but unavailable, the court must then determine whether the proceeding can continue in that party's absence or whether it is indispensable pursuant to Rule 19(b) and the action must be dismissed. *Teamsters*, 173 F.3d at 917–18.

## DISCUSSION

**I. Motion to Dismiss or Transfer Venue**

**A. Subject Matter Jurisdiction**

In *Barton v. Barbour*, 104 U.S. 126 (1881), the U.S. Supreme Court held that the failure by a claimant to seek leave of the appointing court before bringing suit against a court-appointed receiver deprives any other tribunal of subject matter jurisdiction over claims against the receiver. *Id.* at 128. This principle, the so called "*Barton* doctrine," has been extended to suits against bankruptcy trustees, and "prohibits a party from suing a trustee in a non-appointing court for acts done in the official capacity of the trustee and within the trustee's authority as an officer of the court." *Gordon v. Nick*, 162 F.3d 1155 (4th Cir. 1998) (unpublished table decision). Moreover, "The *Barton* doctrine protects not only the trustee, but also other court-appointed officers who represent the bankruptcy estate, including the attorney of the trustee. *Id.* (citing *In re DeLorean Motor*

8

*Co.*, 991 F.2d 1236, 1240-41 (6th Cir. 1993) ("It is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court . . . . counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee.")). Defendant's motion pursuant to Rules 12(b)(1) and 12(h)(3) is premised on the theory that Plaintiff was required to secure leave from the U.S. Bankruptcy Court for the Eastern District of North Carolina before commencing the instant suit against Eastwood, that Plaintiff failed to obtain such leave, and that because of such failure no state or federal court has subject matter jurisdiction over Plaintiff's claims against Eastwood other than the Bankruptcy Court. (ECF No. 34 at 2.)

Defendant advances a series of arguments to support its theory that this Court lacks subject matter jurisdiction over the instant case: (1) the *Barton* doctrine requires the bankruptcy court to serve as "gatekeeper" of litigation against a trustee in order to protect the jurisdiction of the appointing bankruptcy court and the integrity of bankruptcy proceedings (ECF No. 34-1 at 10); (2) the *Barton* doctrine applies to suits against agents of a trustee because the policy reasons justifying the doctrine apply equally to parties who, by virtue of their appointment, serve as the "functional equivalent of a trustee" (*Id.* at 11); (3) the *Barton* doctrine still applies after a bankruptcy case has been closed and the estate assets are no longer under the trustee's control (*Id.* at 12-13); (4) the *Barton* doctrine is jurisdictional (*Id.* at 13); and (5) application of the *Barton* doctrine requires dismissal of this case because the enforcement of the terms of Lismore Village's Declaration and the assessment of homeowners, Eastwood, or others, vested

with the Trustee upon the commencement of the Landcraft Bankruptcy case, and the Trustee, not Eastwood or anyone else, was the Declarant of Lismore Village with the power to act as such (*Id.* at 13-14).

In response, Plaintiff argues that the motion to dismiss on the basis of a lack of subject matter jurisdiction should be denied because Lismore HOA had no obligation to seek leave of the Bankrupcty Court before filing the pending suit. The *Barton* doctrine applies, Plaintiff avers, when two conditions are present: (1) suit is filed against a trustee; and (2) the claims relate to actions taken by the trustee in his official capacity. Plaintiff asserts that neither of these requirements are met in the pending case. (ECF No. 35 at 4-5.) Rather, according to Plaintiff, both causes of action in the complaint arise out of Eastwood's ownership of lots within Lismore Village, specifically the obligations imposed on Eastwood by the Declaration to pay assessments and contribute to working capital as both an owner of lots and the operative Declarant of the community, not out of Eastwood's appointment as "Declarant Agent." (*Id.* at 5-6.) Plaintiff argues that the present case is not subject to the *Barton* doctrine because Lismore HOA has not initiated any claims against the Trustee, nor do any of its claims relate to actions taken in the official capacity of the Trustee or his designee. (*Id.*) Finally, Plaintiff asserts that the *Barton* doctrine does not apply to the present case because the central issue revolves around Eastwood's alleged non-payment of assessments for the seventy-one (71) lots *it owned* in Lismore Village, none of which were assets of the Landcraft Bankruptcy estate. (*Id.* at 6-7.) The Court generally agrees with Plaintiff's arguments and reasoning and hereby denies the motion to dismiss, or in the alternative to transfer, for the following reasons.

Article I, Section 4 of the Declaration defines "Declarant" as follows:

"Declarant" means and refers to Lismore Townes, LLC, a South Carolina limited liability company, and its successors and assigns in interest, and shall also mean and refer to any person, firm, or corporation hereafter vested, at any given time, with title to two or more undeveloped Lots for the purpose of causing residences and appurtenant buildings to be constructed thereon, and any such successor in title to Lismore Townes, LLC, shall be a Declarant during such period of time as such successor is vested with title to two or more such lots (whether undeveloped or developed by such successor but not conveyed from such successor), but no longer.

(ECF No. 28-2 at 3.) Pursuant to that definition, and taking the facts alleged in the complaint as true, *see Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009), Eastwood was a "Declarant" with respect to Lismore Village. There is no mention, within the Declaration, of a requirement for a formal designation as a "Declarant" before an entity owning two or more undeveloped lots for the itemized purpose assumes that role. On the other hand, Article II, Section 3 of the By-Laws defines "Declarant" in the following manner:

"Declarant" shall mean and refer to Lismore Townes, LLC, a South Carolina limited liability company, and shall also mean and refer to any person, firm or corporation *which shall also be designated as a "Declarant" by Lismore Townes, LLC* hereafter when such designee becomes vested with title to two (2) or more undeveloped Lots for the purpose of causing residential dwellings to be constructed thereon, and any such successor in title to Lismore Townes, LLC shall be a Declarant during such period of time as said party is vested with title to two or more such lots (whether undeveloped or developed and unconveyed) but no longer.

(ECF No. 28-2 at 25) (emphasis added). Eastwood adamantly argues that the definition of "Declarant" in the By-Laws controls, and because Lismore Townes never officially designated an additional party as Declarant under the By-Laws, Lismore Townes, and subsequently the Trustee, remained the only Declarant. (ECF No. 43 at 3.) While this distinction *may* reflect on the merits of Plaintiff's breach of fiduciary duty claim (*e.g.* with

11

regard to whether Eastwood owed any fiduciary duty to the Association), the Court does not see the distinction as controlling the question of whether subject matter jurisdiction exists over the case.

By taking title to a lot within Lismore Village, the owner of that lot covenants and agrees to pay assessments. (Declaration, Article V, Section 1, ECF No. 28-2 at 8.)[1] The relevant provision in the Declaration states that "Each such assessment or charge, together with interest, costs and reasonable attorney's fees, shall also be the personal obligation of the Owner of such Lot at the time when the assessment fell due." (*Id.*) Assessments are uniform against all lots, with the exception of Declarant owned lots, which are required to pay 25% of the regular assessment until such time as a residence is constructed upon the lot, at which point the assessment becomes 100%. (Article V, Section 5, ECF No. 28-2 at 10-11.)[2] In addition to Assessments, Article IV, Section 6 of the Declaration requires payment of a Working Capital Fund contribution in the amount of One Hundred Dollars ($100.00) per Lot at the closing of the transfer of title from the Declarant to a Lot purchaser. (ECF No. 28-2 at 8.)

Eastwood may dispute its status as a Declarant under the By-Laws, but it does not dispute the fact that it purchased seventy-one (71) unimproved lots within Lismore Village with the purpose of constructing residential townhomes thereon. Nor does it

---

[1] The Covenant for Assessments reads in relevant part: "The Declarant for each Lot owned within the property, hereby covenants and causes by this Declaration to impose upon each such Lot, and each Owner of any Lot by acceptance of a deed therefor, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association, annual assessments or charges and special assessments for working capital and reserve funds for capital improvements, permitted in this Declaration, and established and collected as hereinafter provided." (ECF No. 28-2 at 8.)

[2] "Assessment Rate. Both annual and special assessments must be fixed at an equal amount for all Lots. Notwithstanding the foregoing, so long as Declarant owns any Lots, Declarant shall pay twenty five (25%) of the otherwise applicable annual or special assessment for any such Lots until the completion of construction of a residential dwelling on such Lot. Thereafter, the Declarant shall pay one hundred percent (100%) of such annual or special assessment until such Lot is sold to another Owner." (ECF No. 28-2 at 10-11.)

dispute the fact that it was the "Owner" of the lots that it purchased. And Plaintiff has alleged that Eastwood failed to pay assessments or make working capital contributions on the lots that it owned. So whether or not Eastwood was the "Declarant" for purposes of the By-Laws, there is no circumventing the core allegation that Eastwood failed to pay monies it owed under the Declaration.

Additionally, Plaintiff's complaint alleges that Eastwood began performing the functions of a Declarant in February 2007 (ECF No. 28 ¶ 15), one and a half years prior to Eastwood and others filing an involuntary bankruptcy petition against Landcraft in November 2008 (ECF No. 38-2), and two years prior to the entry of the January 2009 Settlement Order that authorized Sparkman and Jeutter to appoint Eastwood as the "agent of the declarant for homeowner association issues in the Landcraft and Landcraft affiliated subdivisions (the 'Declarant Agent')" (ECF No. 34-6 at 5). Among other actions consistent with the role of a Declarant, Plaintiff alleges that Eastwood hired and retained a company to serve as Association manager at Lismore Village, approved the annual assessment rate and installment schedule for the Association, directed the Association manager to invoice all lot owners except Eastwood, and directed the Association manager to file liens against certain lot owners for failure to pay assessments. (ECF No. 28 ¶ 16.) The complaint further alleges that the homeowners in Lismore Village only assumed responsibility for the Association and elected their first member-controlled Board of Directors in February 2012, five years after Eastwood allegedly began performing functions consistent with that of a Declarant. (*Id.* ¶ 17.) Meanwhile, with respect to the entire length of the Landcraft Bankruptcy Case (November 2008 to March 2013), the Trustee states in his declaration:

> In my capacity as Declarant for Lismore Village, I did not make or authorize any annual, supplemental, or special assessment of homeowners' dues or fees on the owners in Lismore Village. I also did not authorize Eastwood, as my agent, to make any annual, supplemental, or special assessment of homeowners' dues or fees on the owners of Lismore Village. Similarly, I did not fix, set or authorize any annual assessment period, the due dates of annual assessments of homeowners' dues or fees, or issue or authorize the issuance of any notices of annual assessments of homeowners' dues or fees.

(ECF No. 34-4 ¶ 6.) Yet, according to the complaint, assessments *were* made, *were* collected, and *were* enforced against all lot owners *except* Eastwood, an allegation that the Court is compelled to accept as true at this stage. Some entity must have approved those assessments, and given the stage of this litigation the Court must accept the averment that it was Eastwood. Hence, in an ironic turn of events, evidence submitted by Eastwood in support of its motion to dismiss (Sparkman's declaration) in the end actually supports the denial of that motion.

The precise parameters of the *Barton* doctrine's reach are somewhat unclear, given that the law is not well developed regarding: (1) just how close the relationship between trustee and agent, *in the context of the bankruptcy proceedings*, must be before the doctrine applies, and (2) what actions of a trustee (or agent) are properly deemed to have been taken *within his official capacity.* What is clear to this Court is that the doctrine's reach is not without limit. In other words, the mere showing by a moving party that said party had some level of principal/agent relationship with the trustee, without more, is insufficient to require dismissal for failure to seek leave of the bankruptcy court of a suit with no clear connection to the trustee's appointed duties of collecting debtor assets, evaluating and paying creditor claims, and the like.

In *McDaniel v. Blust*, 668 F.3d 153 (4th Cir. 2012), the Fourth Circuit Court of

14

Appeals stated, "To determine whether a complained-of act falls under the *Barton* doctrine, courts consider the nature of the function that the trustee or his counsel was performing during commission of the actions for which liability is sought." *Id.* at 157 (citing *Heavrin v. Schilling* (*In re Triple S Rests., Inc.*), 519 F.3d 575, 578 (6th Cir.2008)). Clearly, "When trustees act 'within the context' of their role of 'recovering assets for the estate,' leave must be obtained." *Id.* Moreover, "Acts are presumed to be part of the duties of the trustee or his counsel 'unless Plaintiff initially alleges at the outset facts demonstrating otherwise.'" *Id.* (quoting *Lowenbraun v. Canary* (*In re Lowenbraun*), 453 F.3d 314, 321 (6th Cir. 2006)). The *McDaniel* court held that the *Barton* doctrine applied to a suit against the bankruptcy trustee's attorneys for actions taken during the prosecution of an adversary proceeding, because it could not be "seriously dispute[d] that the actions were taken in the context of attempting to prove the adversary action." *Id.*

In contrast, the actions and inactions of which Plaintiff complains in the instant case have nothing to do with the proceedings in the Landcraft Bankruptcy Case. There is no indication that the making and collection of assessments in Lismore Village, or failure to do the same, was done or not done within the context of recovering assets for the Landcraft estate, evaluating and paying creditor claims, or anything of the sort. Thus, Eastwood's argument that the *Barton* doctrine applies to agents of the trustee who are the "functional equivalent of a trustee" (ECF No. 34-1 at 11-12) weighs against, not in favor of, the application of the *Barton* doctrine in this case because Eastwood cannot meaningfully be said to have been acting as the equivalent of a trustee when it allegedly failed to pay assessments on the properties it owned in Lismore Village.

The cases cited by Eastwood in support of the proposition that the *Barton* doctrine is applicable here are unavailing for the simple reason that those cases, to the extent they involved the conduct of the trustees' agents, dealt with actions taken by the agents for the purpose of administering the estate or protecting its assets. (*See id.*) For example, in *Lawrence v. Goldberg*, 573 F.3d 1265 (11th Cir. 2009), the Eleventh Circuit Court of Appeals applied the *Barton* doctrine to a suit brought by a Chapter 7 debtor, who had been held in contempt and incarcerated for failing to comply with the bankruptcy court's order to turn over certain assets, against, *inter alia*, the trustee, the trustee's consulting firm, a law firm that represented the trustee, the trustee's special counsel, an investigative services firm that assisted the trustee, and seven "creditor" defendants. *Id.* at 1270. With respect to the application of the *Barton* doctrine to the investigative services firm, the *Lawrence* court noted:

> The bankruptcy court . . . approved the [t]rustee's hiring of investigator Aviv and his company Interfor, Inc. to *help him discharge his duty to locate assets belonging to the bankruptcy estate.* Thus, Aviv and Interfor, Inc. also functioned as the equivalent of court appointed officers, and [the plaintiff's] claims that they violated the terms of their retainers concerned actions taken in their official capacities.

*Id.* (emphasis added). With regard to the creditor defendants, the court reasoned:

> [T]he bankruptcy court approved a financing arrangement in which the creditors—namely Bear Stearns, acting through managing partners Taub and Lehman—would advance the costs necessary to recover property of the estate and would receive repayment from recovered assets, if any. Thus, *to the extent the creditors financed the [t]rustee's efforts to locate hidden assets on behalf of the estate,* they likewise functioned as the equivalent of court appointed officers, as did their counsel.

*Id.* (emphasis added). The lesson to be drawn from all of this is that where an agent of the trustee has acted in a manner consistent with the traditional trustee tasks of recovering assets for the estate or determining the validity and priority of creditor claims,

16

those actions will be deemed as the functional equivalent of the trustee's own actions and afforded the protections of the *Barton* doctrine. *See McDaniel*, 668 F.3d at 157. Equally sensible is the conclusion that when an agent's challenged actions are wholly distinct from those traditional trustee tasks, and have no connection to the collection or distribution of estate assets, neither the policy nor the legal justifications underpinning the *Barton* doctrine apply to an action brought against the agent, notwithstanding the existence of a principal/agent relationship with the trustee. Here, the Court finds that the alleged actions that form the corpus of Plaintiff's complaint have no connection to the traditional tasks of a trustee, and the *Barton* doctrine's requirement of pre-suit authorization from the Bankruptcy Court does not apply in this case.

In holding that the *Barton* doctrine *did not* support requiring permission from the bankruptcy court in a case where debtors brought an action against the bankruptcy trustee alleging violation of their Fourth Amendment rights when the trustee seized their computer and searched their home pursuant to a district court order, the Fifth Circuit Court of Appeals stated:

> The *Barton* Court's primary concern when holding that leave of the appointing court was required before suit could be brought against the receiver was the usurpation of the powers and duties which belonged exclusively to the appointing court that . . . would have made impossible of performance the duty of that court to distribute the trust assets to creditors equitably and according to their respective priorities. The Seventh Circuit articulated a related and similar concern that if debtors could sue the trustee in a foreign jurisdiction, the foreign court would have the practical power to turn bankruptcy losers into bankruptcy winners. But this concern is not implicated by [the plaintiffs'] complaint.

*Carroll v. Abide*, 788 F.3d 502, 506 (5th Cir. 2015) (internal citations, quotations, and alterations omitted). Similarly, in this case, the rationales underlying the *Barton* doctrine do not support a requirement of leave from the Bankruptcy Court responsible for the

17

Landcraft Bankruptcy Case because, even if Lismore HOA's claims had been brought before that case was closed and Sparkman was discharged as Trustee, those claims would have run *no risk* of usurping powers and duties that belonged to the Bankruptcy Court, would have had *no effect* on the ability of the Bankruptcy Court to distribute the estate's assets to creditors equitably and according to their respective priorities, and would have had *no power* to turn bankruptcy losers into bankruptcy winners. When held up next to the pragmatic foundations of the *Barton* doctrine, it is easy to see Lismore HOA's lawsuit for what it is: a straightforward breach of covenant/breach of fiduciary duty suit seeking to enforce the financial obligations of the entity that owned more than eighty-five percent of the lots in the Lismore Village subdivision.

Moreover, "The *Barton* doctrine serves the principle that a bankruptcy trustee 'is an officer of the court that appoints him,' and therefore that court 'has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties.'" *McDaniel*, 668 F.3d at 157 (quoting *Lebovits v. Scheffel (In re Lehal Realty Assocs.)*, 101 F.3d 272, 276 (2d Cir. 1996)). And "'Without the requirement [of obtaining leave], trusteeship w[ould] become a more irksome duty, and so it w[ould] be harder for courts to find competent people to appoint as trustees. Trustees w[ould] have to pay higher malpractice premiums, and this w[ould] make the administration of the bankruptcy laws more expensive.'" *Id.* (quoting *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998) (alterations in original)). In the case *sub judice*, it can hardly be argued that the Bankruptcy Court had an interest in protecting Eastwood, which was originally the plaintiff in an Adversary Proceeding against the debtor at issue, from liability over its choice to pay or not pay assessments and working capital fund contributions for the lots

18

it owned in the Lismore Village subdivision. Such action or inaction cannot be reasonably construed as "within the scope of [the Trustee's] official duties," *see McDaniel*, 668 F.3d at 157. Likewise, the mere fact that the Bankruptcy Court authorized Sparkman to appoint Eastwood as "the agent of the declarant for homeowner association issues" for certain Landcraft affiliated subdivisions, *see* (ECF No. 34-6 at 5), does not bring the alleged failure to pay such amounts within that scope. Accordingly, Defendant's motion to dismiss for failure to comply with the *Barton* doctrine is denied.[3]

**B. Failure to join a necessary party**

Defendant's motion to dismiss pursuant to Rule 12(b)(7) is premised on the theory that the Trustee is a necessary party because the actions of an agent (Eastwood) acting on his behalf have been challenged and have the potential for impacting the Trustee's interests and potential liability. (ECF No. 34-1 at 15.) Defendant links this theory with its other theory of dismissal, discussed above, that any action against the Trustee would require Plaintiff to secure leave from the Bankruptcy Court, and in the absence of such leave the Trustee may not be joined in this action. (*Id.* at 15-16.) Therefore, argues Defendant, because the Trustee is a required party, but his

---

[3] While neither party has argued the applicability of 28 U.S.C. § 959, the Court finds its general premise helpful to the analysis here. Section 959(a) allows trustees and receivers or managers of any property, including debtors in possession, to be sued "with respect to any of their acts or transactions in carrying on business connected with such property" without prior approval of the appointing court. *Gordon v. Nick*, 162 F.3d 1155 (4th Cir. 1998) (unpublished table decision). This exception has been construed narrowly such that it does not apply to suits against a trustee for actions taken while administering the estate. *In re Cutright*, No. 08-70160-SCS, 2012 WL 1945703, at *6 n.9 (Bankr. E.D. Va. May 30, 2012); *see In re DeLorean*, 991 F.2d at 1241. Morever, the exception "contemplates 'pursuing [the debtor's] business as an operating enterprise,' not the duties of collection, liquidation, and preservation of the debtor's assets." *Id.* (quoting *Muratore v. Darr*, 375 F.3d 140, 144 (1st Cir. 2004)). In the view of the undersigned, the alleged non-payment of assessments and working capital contributions, which constitute the basis of Plaintiff's claims, have more to do with the carrying on of business connected with the Lismore Village subdivision than they do with the administration of the Landcraft Bankruptcy estate. The Court's analysis of the *Barton* doctrine's application to this case stands, irrespective of section 959(a). But the premise underlying this exception makes the issue even more clear given the alleged facts.

joinder is not feasible, the factors in Rule 19(b) counsel toward dismissal of this action. Plaintiff responds that the Trustee is not a necessary party, and that even if the Court were to find he was a necessary party the Court should allow the case to proceed in his absence under the factors itemized in Rule 19(b). (ECF No. 7-11.)

Under Federal Rule of Civil Procedure 19, the Court must conduct a two-step analysis to determine whether the failure to join a person requires dismissal pursuant to Rule 12(b)(7). *See Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 917-18 (4th Cir. 1999). Rule 19(a)(1) states that a person is required to be joined if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may impair or impede the person's ability to protect the interest or leave an existing party subject to substantial risk of incurring inconsistent liability. *See* Fed. R. Civ. P. 19(a). If a party is required to be joined but cannot be, the court must determine whether, in equity and good conscience, the action should proceed with the existing parties or be dismissed, based on the following factors: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. *See* Fed. R. Civ. P. 19(b).

The Court finds that the Trustee is not a necessary party and the action may proceed in his absence. First, the Trustee has not claimed an interest relating to the

20

action, thus it cannot be argued that his joinder is required under Rule 19(a)(1)(B). *See, e.g.*, *Wellin v. Wellin*, No. 2:14-CV-4067-DCN, 2015 WL 628071, at *8 (D.S.C. Feb. 12, 2015) (holding that an absent person's failure to claim an interest in the case constitutes adequate grounds to deny a Rule 19 motion). Second, the Court can afford complete relief between Lismore HOA and Eastwood based on the terms of the covenants in the Declaration, which form the basis of Plaintiff's claims. As more fully explicated in the subject matter jurisdiction analysis above, the actions and inactions of which Plaintiff complains are entirely independent of the proceedings in the Landcraft Bankruptcy Case and cannot be reasonably construed as being in furtherance of the Trustee's official actions. Eastwood's potential liability rises or falls on its own obligations under the Declaration as an owner of seventy-one (71) lots in Lismore Village, irrespective of its principal-agent relationship with the Trustee.

The Court need not reach the application of the factors in Rule 19(b), because the Trustee is not a necessary party. Therefore, Defendant's motion to dismiss on grounds of failure to join a necessary party is denied.

**C. Transfer venue**

Finally, Defendant asserts that, in the event the Court declines to dismiss the pending case for violation of the *Barton* doctrine, proper venue lies with the Bankruptcy Court and this matter should be transferred thereto. (ECF No. 34-1 at 17-24.) Defendant argues that any determination of liability in this action will require interpretation of the Settlement Order and settlement agreement incorporated therein along with deliberation regarding the scope of the Trustee's duties as Declarant and Eastwood's activities as Declarant Agent. (*Id.* at 17.)

21

On this point, the Court would say rather little. As explained more fully above, the pending suit does not truly concern the Trustee's administration of the Landcraft bankruptcy estate, notwithstanding a tangential connection between the two. The Court finds that this action is not "related to" the Bankruptcy Case for purposes of 28 U.S.C. § 157(a), nor is it a "core proceeding" for purposes of § 157(b).

In the Fourth Circuit, the test for determining whether an action is "related to" a bankruptcy proceeding is "'whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *In re Celotex Corp.*, 124 F.3d 619, 625 (4th Cir. 1997) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). In other words, "'An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.'" *Id.* at 624-25 (quoting *Pacor*, 743 F.2d at 994). The instant action, regardless of result, will have no conceivable impact on the Landcraft Bankruptcy estate. Eastwood's liability to Lismore Village, if any, is derived from the Declaration. The determination of Eastwood's obligations under the restrictive covenants will not impact any rights or liabilities of Landcraft or the Trustee.

As to whether any particular case constitutes a core proceeding under § 157(b), the Fourth Circuit has stated:

> On the one hand, a broad reading of the literal terms of the statutory text could lead to the result that courts treat just about every dispute as "core." *See, e.g.*, 28 U.S.C.A. § 157(b)(2)(A) ("matters concerning the administration of the estate"); § 157(b)(2)(O) ("other proceedings affecting liquidation of the assets of the estate"). But, the statute must be interpreted keeping in mind (1) that Congress passed it in response to the defects revealed by [*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982)], and (2) that *Northern Pipeline* remains

> good law, even if perhaps narrowed by subsequent decisions (internal
> citations omitted).

*In re Apex Express*, 190 F.3d 624, 631 (4th Cir. 1999). Defendant argues that the pending case is a core proceeding under § 157(b) because resolution of the case will necessarily address the implementation and performance of the settlement agreement incorporated into the Settlement Order whereby Eastwood's appointment as agent of the Trustee was authorized. The Court disagrees. Plaintiff was not a creditor in the Landcraft Bankruptcy Case or a party in any related adversary proceeding. The settlement agreement that Defendant references is connected to this case only very tangentially, if at all, and the subject matter of Plaintiff's claims derives from the Declaration, not the implementation and performance of the settlement agreement. Moreover, the controversy at issue here does not involve the debtor or property of the debtor or of the estate, nor will it "affect[] the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship." *See* 28 U.S.C. § 157(b)(2)(O). As Plaintiff effectively argues, the relief sought by Lismore HOA hinges upon Eastwood's obligations under the Declaration by purchasing lots from Lismore Towns, LLC years prior to the inception of the Bankruptcy Case. (*See* ECF No. 35 at 15.) Accordingly, venue in this Court is proper and will remain. The motion in the alternative to transfer is denied.

**II. Motion to Extend Scheduling Order**

In its motion to extend the scheduling order, Defendant argues that reasons of judicial economy and efficiency favor extension of the discovery deadlines and stay or extension of all other deadlines and scheduling orders pending the Court's resolution of the motion to dismiss. (ECF No. 50 at 2-3.) Such resolution, argues Defendant, will

have a significant impact on the need for or scope of discovery, potentially even obviating the need for discovery in this Court altogether. (*Id.* at 3.) In response, Plaintiff points out that Defendant filed a similar motion to stay and/or extend discovery deadlines, referencing the same rules and reasoning, when its first motion to dismiss was pending before the Court, and that the cumulative effect has been extensive delay of the case and Defendant's failure to participate in ongoing discovery, in particular Defendant's refusal to produce witnesses for properly noticed depositions. (ECF No. 52.)

The Defendant's motion to extend the scheduling order is granted to the extent that it included a request for a 90 day extension of all deadlines. The premise of the motion to extend discovery and stay all other deadlines was that the Court had not yet ruled on Defendant's motion to dismiss. The motion to dismiss is now resolved by way of this Order. In general, parties should continue to litigate cases according to scheduled deadlines, even when a continuance motion has been filed, until relieved of that responsibility by the Court. However, in recognition of the time that has elapsed since the filing of the motion to extend (March 24, 2016), and the passage of various milestones in the interim, the Court hereby grants Defendant's request for a 90 day extension of all deadlines in the scheduling order beginning with paragraph 5, Plaintiff's expert disclosures, and following. Defendant is instructed to submit a proposed second amended scheduling order with the dates adjusted accordingly.

**III. Motion to Compel**

On April 7, 2016, Plaintiff filed a motion to compel the depositions of Christopher Day, Joe Dority, and a 30(b)(6) representative of Eastwood. (ECF No. 51.) Plaintiff

noticed the depositions on March 3, 2015, to be taken on March 30-31, 2016, but Defendant did not make the putative deponents available for the depositions. Plaintiff requests that the Court grant an Order compelling Defendant to make these individuals available for the taking of their depositions. (*Id.*) Defendant argues in response that it is not resisting Plaintiff's efforts to take the depositions described, but simply requesting a delay of the depositions in order to allow the Court time to rule on the pending motion to dismiss and avoid potentially wasteful discovery. (ECF No. 55.)

The motion to dismiss has been resolved by way of this Order. Accordingly, Plaintiff's motion to compel is granted, and Defendant is directed to make all properly noticed individuals available for the taking of their depositions.

## **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss, or in the alternative to transfer (ECF No. 34) is denied, Defendant's motion to extend the scheduling order (ECF No. 50) is granted in part, and Plaintiff's motion to compel (ECF No. 51) is granted. Defendant is directed to submit a proposed second amended scheduling order with dates adjusted as indicated above.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

June 20, 2016
Greenville, South Carolina

25